The general court overruled the demurrers, and gave judgment that the rejoinders of the defendants were good and sufficient in law to preclude the plaintiff from having and maintaining his aforesaid action against the said defendants.
The plaintiff appealed to the court of appeals, and the cause came on for argument in that court at June term, 1796.
*208 Second. That if the court should be of opinion, that this bond Is to stand as a security in the events that have taken place, that the administrator of MiIlvaine shall perform the decree of chancery against him; yet there has been no breach of that decree, as we allege, and, consequently, the bond is not forfeited.
1 st. point. The bill in chancery was for an account in which the courts of common law have concurrent jurisdiction.
If he had proceeded there, and special bail had been taken, the death of the party before final judgment would have abated the suit, and discharged the bail.
If there had been judgment and a writ of error, the death of the plaintiff in error would have abated the writ, and discharged the bond. 1 Bac. Abr. 212. 1 Com. Dig. 495. The reason is because it is a personal undertaking, which the act of God has prevented from being carried into effect; and, therefore, there can be no forfeiture of the bond.
Mr. Galloway, from friendship, from confidence in Ml Ilvaine, might undertake for him ; but would not for an administrator, set up by Mr. Sloss, who had no knowledge of the facts, and refused to defend the suit. Ought the plaintiff, therefore, to be, or is he placed, in a better situation than he would have been by suing at law? This would be binding a person beyond the scope of his engagement, and which the court will never do, especially against a security.
The bond declares that the same shall be void, if the said MlIhaine, his executors or administrators, shall “ perform the order and final decree of the court of chancery, that shall thereafter be made in the cause aforesaid.” This is the condition of the bond, which cannot, be extended against the party himself in any case, and, much less againsta security. 3 Wils. 539. 2 Ch. Cas. 22. 1 Durnf. 295. Carth. 301. 2 Saund. 411.
By- the death of M^Bvaine the suit abated ; there could *209 be no final decree had against him; therefore, he, his executors or administrators, and his security, were discharged from the bond, because there could be no decree in that cause, unless the gentlemen can show the suit against the executor or administrator is the same suit as that against the principal.
In equity, a bill of revivor before a decree, is in the nature of an original suit; after a decree, it is in the nature of a sci. fa. at law. 1 Harr. Prec. in Cha. 262, 263. 1 P. Wms. 744, 745.
That it is a distinct suit from the original, where there is a revivor before decree is plain, because the party must answer, and may defend themselves in the same manner as if the suit was instituted against them in the first instance. Nay, there may be new parties added on a bill of revivor before decree; and if Mr. Galloway was to be bound, he ought, perhaps, to have been a party that he might have an opportunity of defending himself.
In this case, a bill of revivor was necessary. If there be a decree to account, death abates it. 1 Vez. 182.
An interlocutory decree to account fixes nothing; the account may be either for the plaintiff or defendant.
A decree in chancery, to be paid in a course of distribution ; yet judgment confessed at law, after decree to account, will have priority. 2 Atk. 83.
If it be said the condition of the bond is to pay the order as well as the final decree in the cause, and the order being made in MiIlvaine,s life to account, the security is bound to pay the balance returned by the auditors.(a)
We say in answer, 1st. That there was no audit made ; that the interlocutory decree was giving authority to four persons to audit, and it appears it was made by two of them only. That the issuing the commission was the mere act of the register, and as he has not pursued the *210 decree, the commission is void, and they acted without authority. 2 Inst. 380.
2d. We say that this is not an order, but a decree. If it be said that a decree is an order, I answer, that by the same rule an order is a decree, and the true construction of the bond must be to pay the final order or decree, and not any interlocutory decree.
The counsel in 2 Atk. 385. laid hold of the same distinction, but the court rejected it.
2d point. Either this bond was confined to the person of M'-Ilvaine, and the suit between Sloss and him, in which case, by his death, the suit ended, and there never was any order or decree in that suit which the security was bound to discharge ; or, if the bond obliged him to perform the decree against the administrator, a different person and different suit than that mentioned, then we contend the decree has never been fulfilled and performed by the administrator in the utmost extent the administrator was bound to perform it.
The decree is a decree to pay when assets. It is not pretended that any assets have come to the hands of the administrator. He is bound only in respect to assets, and if Mr. Galloway is his security, then he cannot be bound beyond the principal.
Unless, therefore, it is shown there has been a breach of the bond by the principal, there can be none by the security, and it is admitted by the demurrer there has been no assets.
Suppose a suit at law on an administration bond, there could be no more recovered than the amount of the assets.
It is said the intent was to compel M'Hvaine to refund the money. I deny it; it could not be known who would be debtor ; the bond does not express it, and you cannot compel the principal, and much less the security, to do any thing not expressed in the bond. This would be to surprise the security, who knew the extent of the words, but who would not go beyond them; but by this doctrine, he wouldb e liable to any extent.
*211 The decree is to pay when assets. There has been no assets. You cannot compel the administrator to pay beyond the decree, and shall you compel the security ?
The condition to be construed favourable to the obligor. 1 Saund. 66. Mod. 70. pl. 191.
In this cause, the judges of the general court thought the case a hard one. They gave several terms to effect a compromise, and when that could not be had, they declared they gave judgment with reluctance, but found themselves compelled to do it for the defendant.
Martin., (Attorney-General,) for the appellants.
Mr. M'Evaine, who lived in Pennsylvania, or the Jerseys, having obtained a judgment at law against Mr. Sloss, Mr. Sloss filed a bill in the chancery court, alleging that on an account being had and taken between himself and MMlvaine, he would appear not to be indebted to him, &c. and prayed to be relieved against the judgment obtained, and that an injunction might issue, &c. An injunction accordingly did issue.
The chancellor determined in the course of the proceedings, that the injunction should be dissolved, and that MiIlvaine should receive from Sloss the money for which he had a judgment, provided he gave his bond with approved security, to abide by such order and final decree as should be made in the cause, &e.
The bond in question upon which this suit was brought was accordingly given, and MMlvaine, in consequence, received the money, which otherwise would have remained in the hands of Sloss till the final hearing, and which it was ultimately decided was not due to MlE< vaine; and M'-Evaine’s administrator, in consequence, was ordered by the decree to repay it.
That there is no similarity between the engagement of Galloway in this case, and the engagement of special bail in suits at law, is self-evident.
In suits at law the plaintiff has the body taken, and, unless the defendant can give special bail, holds his body *212 as a security; but by the defendant’s death he loses that security. The engagement of the special bail is to produce again that body which is intrusted to them to 1 ° .... answer for the plaintiff’s claim; and as death would have deprived the plaintiff of the body, had that body been held in gaol at his suit, so the death of the defendant frees the bail from the necessity of producing the body. It is the express and known nature and extent of their engagement.
But the engagement entered into by Galloway was not to be discharged by the delivery of the body of M'llvaine. It was not to terminate by his death, but was explicitly designed to secure Sloss from being injured by the death or insolvency of M*-Ilvaine.
That when a bill of revivor is filed, and the proceedings ordered to be revived against the administrator, it is a continuation of the suit against the testator, and not a new and distinct suit, is so well known to all who have the least acquaintance with chancery practice, that it would be an insult to the understanding of the judges to cite any authorities on the subject.
Those against whom the suit is meant to be revived may, to be sure, put in their answer, but then the answer must amount, either to show that they are not the parties against whom the suit ought to be revived, or to admit they are the proper persons; in which last case, the proceedings are ordered to stand revived against them; and in that case all former proceedings which had been had, still continue parts of the suit, and in whatever stage the suit was at the time of the death, it is taken up from that stage; and all bonds for obtaining or dissolving injunctions, which had been entered into, still remain in full force to entitle the persons by whom they were given to the benefits they thereby obtained; and to render them also ultimately answerable for the engagements they had undertaken.
There may possibly be cases where new parties might. *213 be necessary to be added on a bill of revivor, beside the representatives of the original party; but that proves nothing, because in like manner, if the original party had not died, should it have been discovered new parties were requisite, they might have been added; the suit, therefore, in that respect, both before and after the revivor, is similar.
But because Mr. MiIlvaine died, and the ultimate decree was against the administrator, (by which decree it was determined that a large sum, the principal part of which was the very money obtained by MiIlvaine in consequence of giving the bond in contest, was due and should be paid,) and as being against the administrator, that he should pay out of the assets which might come to his hands, it is alleged on the part of the defendants in error, that Mr. Galloway, the security, is not answerable, inasmuch as the administrator has not assets to pay. Strange, indeed, that when Mr. M1-livable obtained into his hands a large sum of money from Mr. Slossy upon giving bond expressly to secure to him (Mr. Sloss) the repayment of the money if not due to MiIlvaine, and to guard and secure Mr. Sloss against the death or insolvency of MiIlvaine, that very death and insolvency should be used as the arguments why Mr. Sloss should lose the benefit of the bond, and the security be discharged !
Had Mr. MiIlvaine lived to have had the decree pronounced against himself, it is admitted, though he had died next day, the security would have been answerable. So if assets to the amount of the decree had come to the hands of. the administrator, it is not contended but the security would have been answerable had the decree not been complied with. Thus the very events which were meant to be guarded against by the bond, having happened, is the very defence now set up to free the security from the engagements entered into by him!
What is the clear purport and meaning of the engagement entered into by Mr. MiIlvaine and his security ? It *214 is this : “ Permit me to receive from Mr. Sloss that sum for which I have obtained a judgment, and which he ^aS enj°^nec^ an(i we oblige ourselves that he shall be re~ paid it, if, on a final decree, it is determined to be his due.”
The decree, had it passed against M'-Bvaine, would have rendered the security liable it is admitted; that decree would only have ascertained the sum of money due. to Sloss, and ordered the payment.
The decree, as against the administrator, in the same manner decides the sum due, and directs it to be paid to Sloss. It only differs as being against an administrator, deciding how far the administrator is answerable to make the payment, to wit, to the extent of assets ; but is the same for all purposes of affecting the security, as if it had been pronounced against M'-Bvaine. It equally determines the sum due to Sloss; it equally directs that sum to be paid 5 it fixes the extent of the engagement of the security according to its clear, manifest intent and meaning.
Independent of that engagement the money would have remained in Mr. Sloss’s hands. In consequence of that engagement it was taken from him. To say that the security is not bound by the terms of his bond to repay, is a mere quibble on words, and a sacrifice of the plainest meaning and intent of the letter of the engagement.
It is contended on the part of Mr. Sloss, that this engagement “ is to be construed so as to have effect, and correspond with the intention of the parties at the time of making it; therefore a performance according to the letter, and not according to the spirit, of the engagement is not a legal performance.”
It is also contended that “ where there is any doubt as to the construction of an engagement, it is a rule, that it shall be taken in that sense which is most strong against him who makes the engagement, and most beneficial for the other party.”
*215 If authorities are wanting for principles founded on plain common sense, your honours are referred to Espinasse, 270, 271. and the authorities there referred to; also to Doug. 383. and Bac. Abr. tit. Obligation, 706.
What was the intention of the parties when this bond in contest was executed, and at the time of making it, is impossible to be doubted.
As to the authorities cited by the counsel for the appellees, they only prove what is contended for by us, that all engagements are to be construed according to their true intent and meaning, and that, as we contend, they shall not be construed, by the strict letter, to confine and narrow the engagement, contrary to the true intent and meaning; so neither shall they, by the strict letter, be extended beyond the plain and evident intent and meaning.
As to any idea that the bond is to be construed more favourably against the security than against the principal, it is ridiculous. Whenever a principal with security execute the same engagement, whatever the principal thereby undertakes, according to its true construction, the security becomes answerable he shall perform. The engagement of the security is precisely coextensive with that of the principal, and the same construction must be made as to each.
The truth is, that the engagement of one or the other shall not, by an adherence to the mere letter, be either narrowed down and diminished below, or extended and enlarged beyond, the true meaning and intention of the original engagement, at the time of making the same, which is all for which it is contended on the part of the appellant.
The Attorney-General, Key and Pinkney, for the appellant.
Jenings, Cooke and Duvall, for the appellees.
The court of appeals affirmed the judgment of the general court at June term, 1796.